Constance SHELFORD; and Reisha Berkowsky on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**NEW YORK STATE TEACHERS RETIREMENT SYSTEM, Defendant.**

No. 93 CV 0968 (TCP).

United States District Court, E.D. New York.

Sept. 28, 1993.

Elisabeth Ann Seieroe Maurer, Ridgefield, CT, Fink Weinberger, PC, New York City, for plaintiffs.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendant New York State Teachers Retirement System ("NYSTRS") moves to dis-

miss the complaint on the grounds that plaintiffs' Title VII class action claim is barred by the statute of limitations and that the retirement system is a legitimate, gender neutral plan. For the reasons set forth below, this Court finds that plaintiffs' claim is time-barred and hereby dismisses the complaint without prejudice.

*BACKGROUND*

Plaintiffs bring this action pursuant to Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.*, alleging that NYSTRS discriminates against women who wish to bear and raise children by reducing their retirement benefits after a break in service. Plaintiffs seek a declaratory judgment as to plaintiffs' rights and a permanent injunction, restraining NYSTRS from maintaining a policy and practice of discriminating against plaintiffs and other women in this class because of sex with respect to their status as pension beneficiaries. Plaintiffs also seek restitution as to plaintiffs and their class of all the rights, privileges, benefits, and incomes that would have been received by them but for defendant's allegedly discriminatory practices.

NYSTRS is presently comprised of four tiers, divided according to the date of the individual teacher's entry into the retirement system. Teachers employed before July 1, 1973 belong to Tier I; those entering the system between July 1, 1973 and July 27, 1976 are in Tier II; those entering between July 27, 1976 and September 1, 1983 are in Tier III; and those entering after September 1, 1983 belong to Tier IV.

Prior to 1973, the system was not divided into tiers. At that time, funds held by NYSTRS were comprised entirely of contributions from plaintiffs' employers, raised by withholding state and local tax funds appropriated to the support of the schools. As budgetary restrictions reduced the amount of tax dollars available to fund education, NYSTRS was forced to create a tier-based system, reducing the level of the pension benefits afforded to newly hired teachers.

The pension plan with the most advantageous retirement benefits is the Tier I pension plan. The annual retirement allowances of Tier I members are substantially higher than the allowances meted out to those belonging to Tiers II, III, and IV. Moreover, the Tier I members are not required to make any contributions, whereas members of the three remaining tiers are required to contribute as much as three percent of their annual salary. Finally, Tiers III and IV defer full compensation until age sixty-two, whereas Tier I members may retire at age fifty-five and receive unreduced benefits.

NYSTRS provides that a non-vested teacher's membership in the system ceases if the member withdraws his or her accumulated deductions or if the member renders no service as a teacher for a specified period of years. If membership ceases because of a break in service and is later resumed, the teacher enters the system as a new entrant. The break-in-service rule has existed since 1920, but has been amended several times to make it easier for teachers to retain membership in the system despite lengthy absences. In its present form, the rule provides that membership ceases after a five year absence from teaching, but such membership can be preserved by rendering twenty days of service in one out of every seven years. *See* 1986 N.Y.Laws ch. 788 (amending Section 503(3) to provide for cessation of membership when seven years have elapsed since the member has performed service as a teacher); 21 N.Y.C.R.R. § 5001.4(a) ("Twenty days of service rendered in any school year on and after July 1, 1968 shall entitle the member to one year of service credit ... in satisfaction of the service requirement for retention of membership under subdivision 3 of section 503 of the Education Law."). The break-in-service rules apply to men and women equally, without regard for the activities undertaken during the teacher's absence.

Based upon a pyramid principle, NYSTRS, like most other pension systems, relies on paying pension benefits at retirement to fewer than the number of employees who have paid into the system. To give this pyramid its necessarily broad base of "pay-ins" and narrow top of "pay-outs", NYSTRS is structured to reward the long-term employee with little or no job mobility. According to plaintiffs, this type of pension plan conforms best

to the typical "male work pattern" and weighs heavily against the "female work pattern", which is typified by one or more interruptions in work service to bear and raise children, to care for sick and elderly family members, and to follow husbands entering the military or undergoing job transfers. Plaintiffs charge that a pension plan such as NYSTRS that rewards the interruption-free male work pattern while penalizing the discontinuity of the female work pattern is inherently and intentionally discriminatory in violation of Title VII.

All of the plaintiff class members identified in the complaint were classified as Tier I employees before taking a leave of absence to raise their children. Each of the women left teaching having less than the ten years of credited teaching service required to be vested in Tier I. Each of the women was absent from teaching for more than the five years allowed under the break-in-service rule in effect at the time. Upon returning to work in mid–1970s, they were reclassified as Tier III employees, obligated to pay into the system via regular paycheck deductions and eligible to receive fewer benefits than their counterparts in Tier I.

Ellen Meiselman taught school until the 1963–64 school year, when she took a leave of absence to have children. Meiselman returned to teaching in 1976 and was placed in Tier III of the plan. Mary Jean Delfoe taught continuously until the 1970–71 school year when she took maternity leave. She returned to teaching in 1977–78 and, like Meiselman, was placed in Tier III. Jerene Weitman resigned from her post as teacher in the Cold Spring Harbor School District in June 1969 when she was three months pregnant. She performed some substitute teaching work that same year but did not return to teaching until the 1977–78 school year, when she was classified as a Tier III employee. Patricia Moore taught school in West Islip from 1961 to 1964. She performed some substitute teaching in 1968 through 1970, but did not return to teaching on a full-time basis until 1978, when she was placed in

Tier III. Judith Sause left teaching in 1969, after two years' service, to give birth to her first child. She returned to work in 1977 and was placed in Tier III of the pension plan.[1]

In August 1992, three of the women—Mary Jean Delfore, Patricia Moore, and Judith Sause—filed gender discrimination charges against NYSTRS with the Equal Employment Opportunity Commission ("EEOC"). The EEOC dismissed these charges on December 7, 1992 on the ground that they were untimely filed. Plaintiffs filed this action in federal court on March 5, 1993.

## DISCUSSION

■ Defendants argue, *inter alia*, that plaintiffs' complaint is barred by the applicable statute of limitations. A charge alleging discrimination under Title VII must be filed with the EEOC within 180 days after the discriminatory practice occurred, unless the charging party first instituted state proceedings, in which case the charge must be filed within 300 days of the unlawful practice. 42 U.S.C. § 2000e–5(e)(1). Failure to file a timely charge with the EEOC bars any further action on the claim. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). The rationale for this prerequisite to suit in the district courts is obvious: "The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980).

■ In determining whether plaintiffs filed a timely charge with the EEOC, the reviewing court must begin by "identify[ing] precisely the 'unlawful employment practice' of which [plaintiffs] complain[ ]." *Ricks*, 449 U.S. at 257, 101 S.Ct. at 503. The gravamen of the complaint is that the break-in-service rules as applied to the NYSTRS pension plan denied plaintiffs credit for time spent rearing children and engaging in any other activities commonly associated with a female work pat-

---

1. The teaching histories of the named plaintiffs Constance Shelford and Reisha Berkowsky are not set forth in the complaint and therefore are not considered in this Memorandum and Order, which must limit its discussion to the complaint.

tern. Since all of the plaintiffs named in the complaint were affected by the break-in-service rules upon their return to teaching in the mid–1970s and did not file a charge of discrimination with the EEOC until August 1992, plaintiffs' claim may not be said to be timely.

 Plaintiffs attempt to portray the NYSTRS break-in-service rules as a "continuing violation" and therefore within the 300–day limitations period provided by Title VII. Under this exception, "a continuously maintained illegal employment policy may be the subject of valid complaint until a specified number of days after the last occurrence of an instance of that policy." *Acha v. Beame*, 570 F.2d 57, 65 (2d Cir.1978); *see also Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635, 646 (2d Cir.1985), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986); *Association Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). Thus, if a plaintiff can show that he was aggrieved by a currently discriminatory policy or pattern and that the policy or pattern was applied to him within the statutory filing period, the continuing violation theory will apply. As the following discussion will demonstrate, however, continuing violation theory is not applicable to the case herein. *Evans* and its progeny make clear that the mere continuation of a discriminatory act's effects, however painful those effects may be, is not sufficient to rescue a stale claim concerning a violation that occurred prior to the limitations period.

In *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), a female flight attendant who was forced to resign pursuant to the airline's "no-marriage" rule in 1968 was rehired in 1972 when the discriminatory policy was invalidated. *Id.* at 554–55, 97 S.Ct. at 1887. Evans was rehired as a new employee without receiving any credit for her previous seniority. On February 21, 1973, after United denied her repeated requests to be restored to her pre–1972 seniority, Evans filed a charge with the EEOC. *Id.* at 555, 97 S.Ct. at 1887. The District Court dismissed the suit as untimely because Evans' charge had not been filed within ninety days after her discharge. *Id.* at 556, 97 S.Ct. at 1888. The Seventh Circuit originally affirmed the ruling, but reversed after a rehearing, finding that the airline's current seniority policy constituted a continuing violation of its past discriminatory no-marriage rule. *Id.* at 556–57, 97 S.Ct. at 1888.

The Supreme Court reversed, and in so doing, severely restricted a Title VII plaintiff's recourse to the continuing violation theory:

> Respondent emphasizes the fact that she has alleged a *continuing* violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. She has not alleged that the system discriminates against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a non-discriminatory reason. In short, the system is neutral in its operation.

*Id.* at 558, 97 S.Ct. at 1889 (emphasis in original). The Court distinguished its holding from *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976), the case on which the Seventh Circuit relied in finding Evans' EEOC charge to be timely. *Franks* concerned a "remedy issue" whereas, in *Evans*, the dispositive inquiry was whether any present violation existed. Accordingly, the Court found that Evans' claim was barred by the time limitations set forth in § 706(d). *Id.* at 559, 97 S.Ct. at 1889–90.

In *Delaware State Coll. v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court further elucidated its view on continuing violation theory. In March 1974, plaintiff, a black Liberian national, was denied tenure at Delaware State College. *Id.* at 252, 101 S.Ct. at 501. Consistent with the school's policy, plaintiff was not immediately discharged from his employ, but rather, was offered a "terminal contract" to teach one additional year. *Id.* at 253, 101 S.Ct. at 501.

The contract was to expire by its terms on June 30, 1975, at which point in time the employment relationship would end. *Id.* Plaintiff attempted to file an employment discrimination charge with the EEOC on April 4, 1975. *Id.* at 254, 101 S.Ct. at 502. This claim was referred to the state fair employment practices agency, which had primary jurisdiction over employment discrimination complaints in Delaware. *Id.* After the state agency waived its jurisdiction, the claim was referred back to the EEOC which dismissed plaintiff's charge in 1977. *Id.* Plaintiff finally filed a Title VII action in federal court on September 9, 1977. *Id.*

Like the plaintiff in *Evans,* plaintiff Ricks contended that his action was timely under a continuing violation theory. Specifically, Ricks argued that discrimination motivated the college not only in denying him tenure but also in terminating his employment on June 30, 1975. *Id.* at 257, 101 S.Ct. at 503–04. Therefore, the applicable time period did not begin to run until the date of his discharge. *Id.*

The Supreme Court flatly rejected this argument and instead treated the denial of tenure as the accrual date for statute of limitations purposes. The Court found that the only alleged discrimination occurred at the time the tenure decision was made and communicated to Ricks. *Id.* at 258, 101 S.Ct. at 504. The termination of Ricks' employment at Delaware State College was nothing more than "a delayed, but inevitable, consequence of the denial of tenure." *Id.* at 257–58, 101 S.Ct. at 504. For the limitations period to have commenced from the date of discharge, the Court observed, Ricks would have had to allege and prove that "the manner in which his employment was terminated differed discriminatorily from the manner in which the College terminated other professors who had also been denied tenure." *Id.* at 258, 101 S.Ct. at 504. The College, however, treated Ricks like every other professor who had been denied tenure and given a contract to teach one additional year. Accordingly, the Court concluded that Ricks' allegation that the discharge perpetuated the consequences of the discriminatory denial of tenure and therefore prolonged the life of the cause of action was unfounded: "The emphasis is not upon the effects of earlier employment decisions; rather, it 'is [upon] whether any present *violation* exists.'" *Id.* (quoting *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889).

The most recent case in the Supreme Court's trilogy concerning the continuing violation theory is *Lorance v. AT & T Tech., Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). There, female testers at an electronics plant challenged plant's seniority system. Although seniority was originally earned according to the number of years spent in the plant, the system was modified in 1979 to base seniority for those working in the tester positions solely on time spent working as a tester. *Id.* at 902, 109 S.Ct. at 2264. The women argued that this system was discriminatory because women generally had worked less time as testers than their male counterparts. *Id.* at 903, 109 S.Ct. at 2264. They contended that under the pre–1979 system, they would have had sufficient seniority to have avoided demotion in 1982 in the wake of an economic downturn in the electronics industry. *Id.* at 902, 109 S.Ct. at 2264.

The Court rejected the testers' characterization of the modified seniority system at the plant as a continuing violation under Title VII, noting that to allow "a facially neutral system to be challenged, and entitlements under it to be altered, many years after its adoption would disrupt those valid reliance interests that [the statute's limitations period] was meant to protect." *Id.* at 912, 109 S.Ct. at 2269. Under such a scenario, a plaintiff could bring a challenge under Title VII whenever the seniority system visited any disadvantageous effect upon him— whether that be a failure to promote, a demotion, discharge, *or even lesser pension benefits. Id.* (emphasis added). The Court concluded that it was the adoption of the allegedly discriminatory seniority system that triggered the limitations period and that, accordingly, the plaintiffs' claim was time-barred. *Id.* at 911, 109 S.Ct. at 2268–69.

█ Here, as in *Evans, Ricks,* and *Lorance,* the " 'proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became

most painful.'" *Ricks,* 449 U.S. at 258, 101 S.Ct. at 504 (emphasis in original) (quoting *Abramson v. University of Hawaii,* 594 F.2d 202, 209 (9th Cir.1979). With this in mind, we find that it is the facially neutral break-in-service rules that are alleged to be a discriminatory practice or policy in this case. Thus, the violation alleged herein occurred when plaintiffs resumed teaching and the break-in-service rules were applied to them upon re-entry into the retirement system, placing them in a less advantageous tier of that system. Rather than constitute continuous occurrences or acts in furtherance of a practice or policy, all subsequent events were merely the derivative *effects* or the *result* of the allegedly discriminatory event:

> With a facially neutral system the discriminatory act occurs *only* at the time of adoption, for each application is nondiscriminatory (seniority accrues for men and women on an identical basis). But a facially discriminatory system (*e.g.,* one that assigns men twice the seniority that women receive for the same amount of time served) by definition discriminates each time it is applied.

*Lorance,* 490 U.S. at 912 n. 5, 109 S.Ct. at 2269 n. 5. Plaintiffs do not and, indeed, cannot allege that they were treated differently from anyone else whose membership in the pension plan lapsed after a break in service. Men and women alike are placed in an inferior tier of the system after such a lapse. Thus, the paycheck deductions and the lessened benefits during retirement are the delayed, but inevitable consequence of the operation of the break-in-service rules upon plaintiffs' return to teaching. *See Ricks,* 449 U.S. at 258, 101 S.Ct. at 504. The fact that plaintiffs continue to feel the effects of the past discrimination is not the decisive issue: "the critical question is whether any present violation exists." *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889. The answer, quite simply, is no.

Plaintiff contends that the application of the *Evans* line of cases is faulty because those cases do not involve retirement systems. Nevertheless, the characterization of NYSTRS as a seniority system is particularly apt.

■ Seniority systems are afforded special protection under Title VII. Section 2000e–2(h) permits employers to "apply different standards of compensation, or different terms, conditions, or privileges of employment· pursuant to a bona fide seniority ... system, ... provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(h).

■ Seniority systems are not specifically defined in Title VII. Nevertheless, the principal feature of every seniority system "is that preferential treatment is dispensed on the basis of some measure of time served in employment." *California Brewers Ass'n v. Bryant,* 444 U.S. 598, 606, 100 S.Ct. 814, 819, 63 L.Ed.2d 55 (1980). In *California Brewers,* the Supreme Court found that an employment agreement that accorded greater benefits to "permanent" employees who worked at least 45 weeks per year in any two consecutive years than to "temporary" employees constituted a seniority system within the meaning of § 2000e–2(h). *Id.* at 610, 100 S.Ct. at 821–22. Here, NYSTRS also constitutes a seniority system because it provides for increased benefits based upon time served in employment.

Moreover, NYSTRS and its applicable break-in-service rules are deserving of the special protection afforded under Title VII because they are facially neutral.[2] All those on a leave of absence from teaching who fail to maintain their status in the retirement system according to the break-in-service rules and who later return are subject to the same reduction in pension benefits of which plaintiffs complain. The system does not distinguish between men and women or, for

---

**2.** Plaintiffs allege, in a wholly conclusory fashion, that NYSTRS, through its break-in-service rules, "intentionally discriminated" against women, but neglect to substantiate this legal conclusion with any specific facts. (Complaint ¶ 20.) The only factual allegations offered by plaintiffs in their complaint deal with the system's purported disparate impact on women which, of course, is not sufficient to foreclose recourse to the protection afforded to facially neutral seniority systems afforded under § 703(h).

that matter, the reasons for their break in service.

Even assuming *arguendo* that NYSTRS does not constitute a seniority system within the meaning of Title VII, courts in this and other Circuits have generally applied the reasoning of the *Evans* line of cases to preclude the application of the "continuing violation" theory to cases involving pension benefits. *See, e.g., Allen v. United States Steel Corp.*, 665 F.2d 689 (5th Cir.1982) (rejecting claim that EEOC charge need not be filed until pension benefits due, court applied *Evans* rationale and rejected continuing violation theory with respect to neutral pension plan); *Simmons v. South Carolina Ports Auth.*, 495 F.Supp. 1239 (D.S.C.1980) (lower retirement benefits, the result of past discrimination, could not form basis of suit), *aff'd*, 694 F.2d 63 (4th Cir.1982); *Alston v. Allegheny Ludlum Steel Corp.*, 465 F.Supp. 171 (W.D.Pa. 1978) (neutral pension system merely perpetuated effects of allegedly discriminatory refusals to promote), *aff'd*, 594 F.2d 854 (3d Cir.), *cert. denied*, 442 U.S. 943, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979); *Hannahs v. New York State Teachers Retirement System*, 26 Fair Empl.Prac.Cas. (BNA) 527 (S.D.N.Y.1981) (court rejects use of continuing violation theory and dismisses as untimely a challenge to pension plan based upon its use of sex-differentiated mortality tables); *IBEW Local 1805 v. Westinghouse Elec. Corp.*, 25 Fair Empl.Prac.Cas. (BNA) 1093 (D.Md.1979) (seniority and pension claims based on past discriminatory maternity leave policy could not be made timely through use of continuing violation theory). Thus, the complaint in this action is plainly time-barred.

 Plaintiffs presuppose incorrectly that the Civil Rights Act of 1991 applies retroactively to revive their stale Title VII claim. The 1991 Act was intended to change the rule announced in *Lorance* that Title VII plaintiffs may be required to challenge an employment practice upon its adoption. Congress was concerned that such a rule might require an employee to bring a charge of employment discrimination even before he had reason to believe the practice might operate to injure him. 1991 U.S.C.C.A.N. 549,

598–99. In an attempt to do away with the need for such speculative suits, the Civil Rights Act of 1991 provides that the limitations period is triggered "on the later of the date that an unlawful employment practice occurred or the date on which a complaining party suffers an adverse effect from the practice." *Id.* 600. This provision is not limited to seniority systems, but applies to "other employment practices" as well. *Id.*

Here, the law at the time of injury is controlling and the Civil Rights Act of 1991 may not be applied retroactively to rescue plaintiff's time-barred claim. The Second Circuit has already determined that the Act does not apply retroactively to § 1981 promotion discrimination claims under Title VII. *Butts v. City of New York Dep't of Hous.*, 990 F.2d 1397 (2d Cir.1993). Although the *Butts* decision did not specifically address gender discrimination claims brought pursuant to 42 U.S.C. § 2000e such as those complained of by plaintiffs, its reasoning is equally applicable herein. Because both the text of the 1991 Act and its legislative history are silent on the issue of retroactivity, the *Butts* Court turned to certain presumptions the Supreme Court has traditionally applied in the absence of congressional intent. *Bradley v. Richmond School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2015. Contrary to *Bradley* 's presumption of retroactivity, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), held that "congressional enactments . . . will not be construed to have retroactive effect unless their language clearly requires that result." *Id.* at 208, 109 S.Ct. at 471. While it acknowledged that the two lines of thinking co-exist in "irreconcilable contradiction" to one another, the Second Circuit found that *Bowen* represented the more established doctrine:

All of the circuits that have addressed the issue of which presumption ought to apply in the context of the 1991 Act have applied a presumption of prospectivity, and all

have followed *Bowen,* except the Eleventh Circuit which ruled that the Act should be applied prospectively only under either the *Bradley* or the *Bowen* test, since it found it would be 'manifestly unjust' to the defendants to apply the Act retroactively. *Butts,* 990 F.2d at 1410. As for *Bradley,* the Second Circuit agreed with Justice Scalia that it was doubtful whether its presumption of retroactivity survived at all, except insofar as a special rule applicable to changes in the law after initial adjudication. *Id.* (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 854, 110 S.Ct. 1570, 1586, 108 L.Ed.2d 842 (1990)).

Applying the reasoning of the *Butts* decision to the case at bar, this Court declines to apply the Civil Rights of 1991 retroactively to permit plaintiffs to rescue their claim under § 2000e. The Act and its legislative history are devoid of any suggestion that its provisions were to be given retroactive effect and this case was not yet pending before the District Court when the statute was enacted. Thus, there is no compelling reason to abandon the well-established presumption of prospectivity in the instant case. Indeed, other courts faced with a similar quandary in the wake of *Butts* have reached a like conclusion. *See Finkel v. New York City Hous. Auth.,* 1993 WL 113313 at *1 (E.D.N.Y.1993) (rejecting plaintiff's motion to amend complaint brought pursuant to § 2000e to add claims under the 1991 Act because Act only to be applied prospectively); *see also Wisdom v. Intrepid Sea–Air–Space Museum,* 993 F.2d 5 (2d Cir.1993) (1991 Act did not apply retroactively to claim pending at time of its enactment); *Cornett v. Bank of Cal. Int'l,* 1993 WL 254983, *1–2, 1993 U.S.Dist. LEXIS 8855 at *4–5 (S.D.N.Y.1993) (same).

In any event, even if the 1991 Act were applied retroactively, plaintiffs' claim would still be time-barred. The Act provides that the limitations period begins to run on the later of the date of the occurrence of the unlawful practice or the date of injury. Here, the allegedly discriminatory practice is the application of the break-in-service rules to reduce the pension benefits of returning female teachers. As alleged by plaintiffs, the consequences of the rule are immediate: the teacher need not wait until retirement to suffer injury in the form of reduced benefits; she is injured from the date of her return to teaching by virtue of the contributions extracted from her biweekly paycheck. Thus, even if the 1991 Act is applied retroactively, the statute of limitations began running as to each of the plaintiffs' claims as soon as she returned to teaching and was placed in an inferior tier of the retirement system. As all of the plaintiffs named herein returned to teaching during the 1970s, their claims are now time-barred.

*CONCLUSION*

Based on the foregoing discussion, defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) must be and hereby is granted without prejudice.

SO ORDERED.